### LEO BENTO v. MARIA F. BENTO
### (AC 30504)

Gruendel, Robinson and Borden, Js.

Argued April 8—officially released November 30, 2010

*George J. Markley,* for the appellant (plaintiff).

*Samuel V. Schoonmaker IV,* with whom, on the brief, was *Wendy Dunne DiChristina,* for the appellee (defendant).

### Opinion

ROBINSON, J. The plaintiff, Leo Bento,[1] appeals from the judgment of the trial court dissolving his marriage to the defendant, Maria F. Bento. On appeal, the plaintiff claims that the trial court abused its discretion with respect to its financial orders by (1) awarding the defendant attorney's fees, (2) ordering the parties equally to be responsible for a corporate debt and (3) dividing the parties' assets other than on a fifty-fifty basis. The plaintiff also claims that the court's finding that the parties had agreed to the division of their personal property was clearly erroneous. The plaintiff generally claims that the court's memorandum of decision is insufficient to support its financial orders due to the lack of factual findings. We affirm in part and reverse in part the judgment of the trial court.

The plaintiff commenced this action in October, 2007, seeking dissolution of his marriage to the defendant. He alleged that he had been a resident of this state since June 18, 2007, and intended to make it his permanent

---

[1] The plaintiff also is known as Leonel Bento.

residence. He further alleged that the marriage had broken down irretrievably. In addition to a dissolution of marriage, the plaintiff sought alimony, an equitable distribution of the parties' assets and such other relief as the court may deem necessary and proper. In January, 2008, the defendant admitted the allegations of the complaint and alleged a cross claim seeking a dissolution of marriage on the basis of irretrievable breakdown. She also alleged that the parties were the equitable and beneficial owners of the marital home in Hartsdale, New York. She sought a dissolution of the marriage, alimony, equitable distribution of the parties' assets, reasonable attorney's fees and other relief the court may deem proper. The action was tried to the court in October, 2008.

In its memorandum of decision issued on October 21, 2008, the court made the following findings of fact. The parties were married in Yonkers, New York, on July 10, 1968, and have three children, all of whom have reached the age of majority. Neither of the parties has been the recipient of financial assistance from the state. At the time of trial, the plaintiff was sixty-six years old, and the defendant was sixty-three years old. The plaintiff previously had brought a dissolution action in the state of New York but had failed to prevail, and the case was disposed of in 2007.

The court found that the plaintiff has suffered two heart attacks, takes medication on a regular basis and has not been employed on a regular basis since 2000, due to his health problems. The plaintiff has only four years of education but appears to have obtained something equivalent to a graduate equivalency degree. The plaintiff acknowledged that he had had at least one extramarital sexual liaison in 2004. Although he claimed that the marriage had broken down in 2000, he continued to live with the defendant and take trips with her in an effort to reconcile.

The court found that the defendant's version of things was different. According to the defendant, the marriage broke down in 2005 when serious difficulties with the plaintiff began. She claimed to have been the victim of vile and opprobrious language, as well as physical acts of force against her. The court found that although most of what it described as the plaintiff's "loathsome" conduct occurred in the latter stages of the forty year marriage, there was sufficient evidence to prove that the cause of the marital breakdown was the plaintiff's fault.

In dissolving the marriage and entering its orders, the court considered the parties' claims and the criteria set forth in General Statutes §§ 46b-81[2] and 46b-82.[3] The court dissolved the marriage and entered orders regarding alimony, the marital home, tax liabilities, assignment of real property in Portugal, the parties' bank accounts and motor vehicles and their personalty. The court also assigned responsibility for the parties' liabilities and awarded the defendant attorney's fees. The plaintiff appealed.

The majority of the plaintiff's claims concern the court's financial orders. "Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders . . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion

[2] General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . ."

[3] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . ."

or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Citation omitted; internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 235, 987 A.2d 362 (2010).

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . No single criterion is preferred over others, and the trial court has broad discretion in varying the weight placed on each criterion under the circumstances of each case." (Citations omitted; internal quotation marks omitted.) *Watson* v. *Watson*, 20 Conn. App. 551, 554, 568 A.2d 1044 (1990), rev'd in part on other grounds, 221 Conn. 698, 607 A.2d 383 (1992). Our decisions neither hold nor intimate that "the trial court must make specific, detailed findings on each factor it considered pursuant to § 46b-82 or otherwise. We do, however, require that the record contain some indication as to the reasoning of the trial court in making an exercise of its discretionary powers in this type of proceeding." Id., 556 n.2, quoting *Markarian* v. *Markarian*, 2 Conn. App. 14, 17 n.2, 475 A.2d 337 (1984).

I

The plaintiff's first claim is that the court abused its discretion when it awarded the defendant $7500 in attorney's fees. We are unable to resolve the claim due to ambiguity in the court's memorandum of decision as to this issue. By failing to file a motion for articulation, the plaintiff has failed to provide an adequate basis for review. See Practice Book §§ 60-5 and 61-10.

The court ordered the plaintiff to pay the defendant $7500 toward the payment of her attorney's fees. In its memorandum of decision, the court stated, in relevant

part: "The [plaintiff], who recently sought a dissolution action and failed to prevail and who has been less than cooperative in providing disclosure in this proceeding, shall pay to [the defendant] the sum of $7500 toward her attorney['s] fees." On appeal, the plaintiff contends that the court's award is contrary to General Statutes § 46b-62.[4]

The court's order, however, is not clear as to the factual and legal basis on which it awarded the defendant attorney's fees. The memorandum of decision offers at least two reasons for the award, and the plaintiff failed to seek an articulation from the court. See Practice Book § 66-5. Moreover, in ruling on the contempt motions filed by the parties, the court denied the plaintiff's motion for contempt and overruled the plaintiff's objection to the defendant's motion for contempt. It is unclear whether the court, by implication, granted the defendant's motion for contempt[5] and whether that was the basis of its award of attorney's fees.[6] The appellant bears the burden of providing an

---

[4] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse  . . .  to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

[5] In her motion for contempt filed October 2, 2008, the defendant represented, in part: "2. The [p]laintiff has willingly and intentionally violated the terms of the September 11, 2008 [s]tipulation and the March 27, 2008 [c]ourt [o]rder by failing to provide the [d]efendant with a complete response to her [r]equest for [p]roduction. 3. On September 11, 2008, the parties entered into a [s]tipulation, [p]endente [l]ite, whereby the [p]laintiff was to provide the [d]efendant with all outstanding discovery (listed on the attached Schedule A) on or before September 29, 2008. 4. To date, only five days before trial, the [p]laintiff still has not provided the [d]efendant with any of the documents listed on Schedule A. 5. The [d]efendant first requested these documents from the [p]laintiff on January 11, 2008 . . . ."

[6] "Our Supreme Court has held that litigation misconduct can be considered in determining an award of attorney's fees under § 46b-62." *Gil* v. *Gil*, 110 Conn. App. 798, 808, 956 A.2d 593 (2008). In *Jewett* v. *Jewett*, 265 Conn. 669, 694, 830 A.2d 193 (2003), our Supreme Court "implicitly acknowledged that a party's litigation misconduct can form part of the basis of such an

adequate record for review. *Mickey* v. *Mickey*, 292 Conn. 597, 609, 974 A.2d 641 (2009). Because the record is ambiguous, we cannot review the plaintiff's claim.

## II

The plaintiff's second claim is that the court abused its discretion by ordering that the parties equally be responsible for a corporate debt owed Manuel Pedro and/or Maria Pedro. The court made no findings of fact, recited no evidence and cited no law with respect to this order. Moreover, it did not actually find that a debt was owed. The court merely ordered that "both parties shall be equally responsible for 50 percent of the funds due Manuel Pedro and/or Maria Pedro." The plaintiff did not seek an articulation.[7]

We acknowledge that, in rendering a judgment of dissolution, the court has the authority to assign "the debts and liabilities of the parties"; (internal quotation marks omitted) *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 531, 865 A.2d 1240 (2005); and to order "one party to assume the joint liabilities of both parties. General Statutes § 46b-81 (a) . . . ." (Citation omitted.) *Osakowicz* v. *Osakowicz*, 57 Conn. App. 807, 809–10, 750 A.2d 1135 (2000). Nonetheless, "[t]here must be some indication in the record as to the basis of the trial court's determination of the award." *Watson* v. *Watson*, supra, 20 Conn. App. 555. Neither party included a debt to Manuel Pedro and/or Maria Pedro on his or her financial affidavit. Without any finding that the parties owed a debt, the court abused its discretion in ordering them to be

award of attorney's fees." *Ramin* v. *Ramin*, 281 Conn. 324, 353, 915 A.2d 790 (2007).

[7] In asserting this claim, the plaintiff relies on a promissory note signed by the defendant on behalf of Transclassic Coach Corporation. The court, however, did not identify the promissory note as the basis of the debt owed Manuel Pedro and/or Maria Pedro. Without an articulation, we cannot assume that the note is the basis of the court's order regarding the debt owed Manuel Pedro and/or Maria Pedro.

responsible equally for it. The case is remanded to the trial court with direction to vacate that portion of the court's financial orders that the parties "be equally responsible for 50 percent of the funds due Manuel Pedro and/or Maria Pedro."[8]

### III

The plaintiff's third claim is that the trial court abused its discretion in issuing its financial orders regarding alimony, payment of the carrying costs on the marital home and division of the parties' assets. More specifically, the plaintiff claims that the court abused its discretion with respect to its alimony award in light of his income and that of the defendant.[9] He also claims that the court abused its discretion by failing to award him 50 percent of the proceeds from the sale of B & S Realty of Yonkers, Inc. (B & S Realty). He also complains that the court awarded him only 39 percent of the parties' net assets and the defendant 61 percent of the net assets. All of the plaintiff's claims are fact based pursuant to his interpretation of the evidence. Although the plaintiff complains that following a three day trial, the court did not make any findings regarding the financial circumstances of the parties, he failed to file a motion for articulation seeking the factual and legal basis of the court's orders. See Practice Book § 66-5.

The court issued the following financial orders. The defendant is to pay the plaintiff alimony in the amount of $1500 per month until the death of either party, the plaintiff's cohabitation as defined by statute or remarriage, the completion or cessation of the monthly note payments from the sale of B & S Realty, or January

[8] Vacating this specific portion of the court's financial orders will not affect the court's mosaic. It affects both parties equally and is severable. See *Maturo* v. *Maturo*, 296 Conn. 80, 124, 995 A.2d 1 (2010). Moreover, assuming without deciding that the order was predicated on the promissory note, it is the debt of a corporation, not the parties to this dissolution action.

[9] The plaintiff did not receive alimony pendente lite.

30, 2009, whichever occurs first. Beginning February 1, 2009, the defendant shall pay the plaintiff alimony in the amount of $1800 per month until the death of either party, the plaintiff's cohabitation as defined by statute or remarriage, the completion or cessation of the monthly note payments from the sale of B & S Realty or March 1, 2016, whichever shall first occur.

The court ordered the immediate sale of the marital home in Hartsdale, New York, the net proceeds of which were to be divided equally between the parties.[10] With regard to other marital assets, the court ordered that the defendant is to pay the plaintiff, upon receipt, 40 percent of the net proceeds from the $1.5 million balance due from the sale of B & S Realty. The defendant must pay any federal and state taxes due with respect to the sale prior to the date of judgment. Any tax obligation related to the property incurred subsequent to judgment shall be divided between the parties with the defendant paying 60 percent of the postjudgment taxes. The court awarded the defendant property in Viera, Portugal, and Corredoura, Portugal, and the plaintiff property in Porto de Mos, Portugal. The Citibank and Commerce Bank checking and savings accounts were awarded to the defendant, along with the Chrysler minivan. The plaintiff was awarded the Chase savings and checking accounts and the Mercedes 350 automobile.[11]

The court ordered the parties to be responsible for their respective liabilities and their own medical and dental expenses and for health insurance coverage. The

---

[10] The parties were ordered to "engage a broker and list the real estate for no less than $600,000. If it cannot be sold within ninety days, the real estate listing price shall be reduced 7 percent every ninety days successively until sold. Both parties shall share from the date of this judgment all carrying expenses on a fifty-fifty . . . basis, i.e., taxes and insurance. Any improvement or repairs needed to enhance the marketability shall be shared by the parties equally. The net proceeds of sale after the payment of closing expenses shall be divided equally."

[11] The court did not find the value of the funds in the various accounts.

court found that the defendant has benefited from the proceeds of the sale of B & S Realty that had occurred in April, 2006. She received a cash payment of $100,000 and $250,000 in a lump sum payment. In addition, she has received the monthly interest on the $1.5 million note that was given by the purchasers of the business. The court also found that the plaintiff was incapacitated and that the plaintiff and the parties' daughter, Teresa Tomas, assumed responsibility for operating the business. A large part of the $350,000 from the sale of B & S Realty was used to pay the liabilities of the business. Nonetheless, the court concluded that the defendant received a substantial benefit from the proceeds of the sale of the business and ordered her to pay the federal or New York state tax obligation as it relates to the sale to the date of judgment.

Section 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

The court found that the plaintiff had suffered two heart attacks, takes medication on a regular basis and has not worked *on a regular basis* since 2000 due to his health problems.[12] The court also found that the plaintiff was responsible for the breakdown of the marriage due to "his loathsome conduct" during the latter

[12] In his brief, the plaintiff contends that he is in "very poor health . . . ." The plaintiff, however, has not pointed us to any expert testimony to substantiate the extent of his medical problems. The essence of the plaintiff's claim is that he is unable to earn an income. The court found that he did not have *regular* employment.

stages of the forty year marriage.[13] In their briefs, the parties recite the evidence from their respective points of view concerning the history of their business and financial dealings. Our review of the transcripts discloses that the parties hold widely different views of the facts. The court made no credibility determinations.

In this case, we cannot conclude that the court failed to consider the factors enumerated in § 46b-82. In the second paragraph of the court's memorandum of decision, the court noted the length of the parties' marriage and their ages, the plaintiff's health problems, recent employment history and level of education. Moreover, the court noted that the plaintiff had engaged in at least one extramarital affair in 2004. The court also noted the different perspectives of the parties as to when the marriage had broken down irretrievably and who was to blame. The court did not make specific findings as to the history of the parties' business relationship and income or their assets and liabilities. The court divided the marital home equally between the parties and ordered the defendant to pay the plaintiff alimony. With respect to moneys due from the sale of the parties' business, the court roughly divided the proceeds 40 percent to the plaintiff and 60 percent to the defendant. The court ordered the defendant to pay any prejudgment tax liabilities.

Although the memorandum of decision is spare, the court was not required to render its financial orders with mathematical precision. The plaintiff did not file a motion for articulation seeking clarification of the court's financial orders. The heart of the plaintiff's claim is that the court did not divide the parties' assets fifty-fifty and equalize their monthly incomes. In doing so, he fails to consider that the court found him at fault

---

[13] The plaintiff makes no mention of this factual finding in his brief and how it may have affected the court's financial orders.

for the breakdown of the marriage and that the court ordered the defendant liable for the business tax obligations. We conclude, therefore, that the court did not abuse its discretion in awarding alimony and dividing the parties' assets.

## IV

The plaintiff's final claim is that the court improperly found that the parties had stipulated to the division of their personal property and therefore failed to award the plaintiff certain personalty. We agree that the record does not support the court's finding that the parties stipulated to the division of their personalty. During the evidentiary portion of the trial, the plaintiff presented no evidence as to personal property he wanted from the marital home. Immediately prior to closing arguments of counsel, the following colloquy took place:

"The Court: . . . What did we do with the personalty? We talked about that, right?

"[The Defendant's Counsel]: You asked [the plaintiff's counsel] to give me a list. I still haven't received a list. It's been a week and a half. . . .

"[The Plaintiff's Counsel]: I just got the list today, Your Honor. I could copy it over. It's in [the plaintiff's] handwriting.

"The Court: No, no, no."

Following oral arguments, the following colloquy occurred:

"[The Plaintiff's Counsel]: . . . I do have [the plaintiff's] list. It is handwritten. I don't know if the court will entertain—if I could provide it to you and provide a copy to [the defendant's counsel], but I did receive this right before we came to court today. Handwritten.

"The Court: Have you shown it to [the defendant's counsel]?

"[The Plaintiff's Counsel]: I have not shown it to [the defendant's counsel] yet. I have the original, and then I just had my office copy it because we didn't even receive it ahead of time.[14]

\* \* \*

"The Court: Did you look at that personal list, that personal property list?

"[The Defendant's Counsel]: She's doing it now, just quickly, Your Honor. Is there anything that you don't think you know that he can have?

"[The Plaintiff's Counsel]: Your Honor, can I submit this to the court?

"The Court: No.

"[The Defendant's Counsel]: Actually, I object. . . .

"[The Plaintiff's Counsel]: It's just his request. I'm not saying. . . .

"The Court: Why don't you just make a note, no objection, and give it to me in chambers, okay? Whatever you have on that list.

"[The Defendant's Counsel]: Oh, come back in chambers with whatever we have?

"The Court: Yeah.

"[The Defendant's Counsel]: Okay. I'll do that, yes. We're almost done, Your Honor. Thank you, Your Honor.

"The Court: Recess, please."

---

[14] The plaintiff's counsel then made a statement to the court unrelated to the personalty. This colloquy must have transpired at the end of the day, as the court interrupted and stated: "Please finish because the time is . . . we've got to be out of here—"

Counsel delivered the list to the court, and the court attached the list to its memorandum of decision. The attachment is a handwritten list containing the notation "O = he can have [illegible]. A." What appear to be the signatures of the plaintiff and counsel are at the bottom of the page. The meaning of the writing and notations on the document is ambiguous, and there is no record regarding its content. In its memorandum of decision, the court stated that "[t]he parties have agreed to a division of personal property."

Given the record with respect to the parties' personalty, we conclude that the court's finding that the parties agreed to the division of their personal property is clearly erroneous. A court's finding is "clearly erroneous when there is no evidence in the record to support it . . . ." (Internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 397–98, 985 A.2d 319 (2009). We, therefore, reverse this portion of the judgment and remand the case for further proceedings with respect to the parties' personalty.

The judgment is reversed in part and the case is remanded with direction to vacate the order pertaining to Manuel Pedro and/or Maria Pedro and for further proceedings regarding the division of the parties' personalty. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.