ANNETTE JUNGNELIUS *v.* JARL JUNGNELIUS
(AC 32506)

Gruendel, Robinson and Sullivan, Js.

Argued September 9, 2011—officially released January 31, 2012

*Bruce A. Chamberlain,* for the appellant (defendant).

*Eric W. Callahan,* for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, Jarl Jungnelius, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Annette Jungnelius, and awarding her alimony. On appeal, the defendant claims that the court (1) improperly determined that it had subject matter jurisdiction and (2) abused its discretion with respect to the alimony award. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the plaintiff's appeal. The plaintiff initiated the action for dissolution of marriage with a complaint that was served on the defendant on February 13, 2009. In May, 2009, the defendant asked the plaintiff to withdraw the dissolution action and to go

to counseling in an attempt to reconcile. On May 19, 2009, the plaintiff withdrew the action. The plaintiff and the defendant took a family vacation to California from July 30 through August 8, 2009. Prior to leaving for this vacation, however, the defendant filed a dissolution action in Sweden but did not immediately inform the plaintiff. The plaintiff did not learn of the existence of the Swedish dissolution action until August 28, 2009, when she was served with the papers. On August 31, 2009, the plaintiff filed a motion to restore the Connecticut case to the docket. On September 28, 2009, the defendant filed a motion to dismiss the plaintiff's action pursuant to Practice Book § 25-12, General Statutes § 46b-115 et seq., and the common-law doctrine of forum non conveniens. On October 30, 2009, the court, *Boland, J.,* granted the plaintiff's motion to restore and denied the defendant's motion to dismiss. A limited contested trial was held before the court on April 22 and 23, 2010.

On May 21, 2010, the court, *Shluger, J.,* issued its memorandum of decision, setting forth the following findings of fact.[1] The plaintiff and the defendant married on September 27, 1987, in Stockholm, Sweden, and have three children including one minor child, Gustaf Jungnelius. One of the parties had resided continuously in Connecticut for at least one year prior to the commencement of the dissolution action. The defendant had been employed as a research physician and a vice president with Celgene, which is headquartered in New Jersey, but he had worked in Switzerland. The family moved to Connecticut in 2002 and lived there until 2009, at which time the dissolution action was commenced. The court found that the plaintiff testified credibly that her intention was to continue to reside in Connecticut with Gustaf beginning in the summer of 2010. The plaintiff, a licensed nurse in Sweden, is not certified to work in

---

[1] The defendant does not challenge the court's findings of fact.

the United States. She primarily had been responsible for raising the three children and was a capable and valued homemaker, which allowed the defendant to excel and to prosper in his career. The cause of the dissolution was mutual. The parties separated in the fall of 2008 with the defendant vacating the marital residence and working in Switzerland. The plaintiff's parenting plan was to remain in Connecticut with Gustaf but in a smaller home. She sought joint physical custody of Gustaf with primary residence with her and a reasonable and liberal visitation for the defendant. The defendant's parenting plan also asked for joint physical custody but that Gustaf reside in Sweden with extended family. The court found the plaintiff's parenting plan to be in the best interest of the child. The court found that the plaintiff will have an earning capacity, after two years of schooling, working as a nurse in the United States. Both parties agreed that the marital home should be sold. Additional facts will be provided, as necessary.

I

On appeal, the defendant first claims that the trial court lacked subject matter jurisdiction over the dissolution action. The defendant argues that the plaintiff had moved to Sweden and was not living in Connecticut in August, 2009, when she filed the motion to restore the case to the regular docket after the withdrawal in February, 2009, and that she was not living in the state in April, 2010, until the date of the trial. Therefore, he argues that the plaintiff does not meet the residency requirement under General Statutes § 46b-44. The plaintiff responds that she and Gustaf temporarily had gone to Sweden on August 11, 2009, for one academic year in order to allow him to become proficient in Swedish.

"The applicable standard of review is well established. A determination regarding a trial court's subject

matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . We must determine whether the court had subject matter jurisdiction to entertain the plaintiff's complaint. We are mindful that [a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . . [W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Temlock* v. *Temlock*, 95 Conn. App. 505, 518–19, 898 A.2d 209, cert. denied, 279 Conn. 910, 902 A.2d 1070 (2006).

The defendant argues that (1) the plaintiff did not meet the residency requirement to file a complaint for dissolution of marriage and (2) the court lacked subject matter jurisdiction to enter the decree dissolving the marriage. Because the defendant's claims have different requirements, we will examine them separately.

A

Residency Requirement to File the Complaint

First, the defendant argues that the plaintiff did not meet the residency requirement to file the complaint for dissolution of marriage. "A complaint for dissolution of a marriage . . . may be filed at any time after either party has established residence in this state." General

Statutes § 46b-44 (a). Our Supreme Court has interpreted this section liberally. "For the purposes of filing a complaint for dissolution of marriage or for the granting of alimony or support pendente lite, residence of one party, without a showing of domicil, is sufficient to give the court subject-matter jurisdiction under [General Statutes] § 46-35."[2] *LaBow* v. *LaBow*, 171 Conn. 433, 439, 370 A.2d 990 (1976). This court has determined that a party meets the requirements of § 46b-44 (a) if the complaint is filed while he or she is a resident of Connecticut. See *Carchrae* v. *Carchrae*, 10 Conn. App. 566, 569, 524 A.2d 672 (1987).

Here, the court found that at the time the dissolution was commenced, both parties were living in Connecticut. The complaint in this case was filed in the judicial district of New London on February 20, 2009. At that point, the plaintiff had been living continuously in Connecticut since 2002. The plaintiff did not leave for Sweden until August 11, 2009. Therefore, we conclude that the plaintiff met the residency requirement under § 46b-44 (a) to file a complaint for dissolution of marriage.

B

Residency Requirement to Establish
Subject Matter Jurisdiction

The defendant also claims that the court lacked subject matter jurisdiction to enter its decree dissolving the marriage. He argues that because the plaintiff was not living in Connecticut at the time that she filed the motion to restore the case to the regular docket and was not living in the state at the time of the trial in

---

[2] "Subsequent to *LaBow*, General Statutes (Rev. to 1977) § 46-35 was amended and transferred to General Statutes § 46b-44 by Public Acts 1978, No. 78-230, § 20. The amendment, however, was merely a technical revision and was not intended to effect a change in the substance of the law. Hearings before Joint Standing Committee on the Judiciary, Pt. 4, 1978 Sess., pp. 1558–59." *Sauter* v. *Sauter*, 4 Conn. App. 581, 584, 495 A.2d 1116 (1985).

April, 2010, she does not meet the residency require-
ments under § 46b-44. The plaintiff responds by arguing
that she met the requirements of § 46b-44 (c) (1), and,
therefore, the court had subject matter jurisdiction over
the entire proceeding.[3]

Section 46b-44 (c) provides in relevant part: "A decree
dissolving a marriage . . . may be entered if: (1) One
of the parties to the marriage has been a resident of
this state for at least the twelve months next preceding
the date of the filing of the complaint or the next preced-
ing the date of the decree . . . ." In interpreting § 46-
35, the predecessor to § 46b-44, our Supreme Court
noted: "In the prior statute . . . residence was con-
strued to require domicil plus substantially continuous
physical residence in this state. . . . This accords with
the pronouncement of the United States Supreme Court
in *Williams* v. *North Carolina*, 325 U.S. 226, 229, 65 S.
Ct. 1092, 89 L. Ed. 1577 [1945], that [u]nder our system
of law, judicial power to grant a divorce—jurisdiction,
strictly speaking—is founded on domicil. . . . Domicil
implies a nexus between person and place of such per-
manence as to control the creation of legal relations and
responsibilities of the utmost significance. For those
reasons, the present statute must require, for a dissolu-
tion decree founded on the first or second of the enu-
merated bases, domicil plus substantially continuous
residence in Connecticut by one of the parties for the
twelve months next prior to either the filing of the
complaint or the granting of the decree." (Citations
omitted; internal quotation marks omitted.) *LaBow* v.
*LaBow*, supra, 171 Conn. 437.

---

[3] The plaintiff further argues that the trial court also had subject matter
jurisdiction under § 46b-44 (c) ("[a] decree dissolving a marriage or granting
a legal separation may be entered if . . . [3] the cause for the dissolution
of the marriage arose after either party moved into this state"). Because
we find that the plaintiff meets the requirements of § 46b-44 (c) (1), we do
not need to discuss the plaintiff's argument based on § 46b-44 (c) (3).

The enumerated bases to which the *LaBow* court referred correspond to § 46b-44 (c) (1).[4] This court previously has held that § 46b-44 (c) requires domicile plus substantially continuous residence in the state. "In *LaBow*, our Supreme Court pointed out that the term residence as used in our dissolution statutes has been construed by our courts to require domicil plus substantially continuous physical residence in this state for the granting of a dissolution decree. . . . It also noted that General Statutes (Rev. to 1977) § 46-35, the immediate predecessor of General Statutes § 46b-44 which currently sets forth the jurisdictional requirements applicable to dissolution actions, required domicil plus substantially continuous residence in Connecticut by one of the parties for the twelve months next prior to either the filing of the complaint or the granting of the decree." (Citation omitted; internal quotation marks omitted.) *Sauter* v. *Sauter*, 4 Conn. App. 581, 582–83, 495 A.2d 1116 (1985). Therefore, to satisfy the requirements of § 46b-44 (c) (1), the court must find domicile plus substantially continuous residence in Connecticut by one of the parties for the twelve months prior to the filing of the complaint *or* the granting of the decree.

The defendant argues that neither party was domiciled in Connecticut in August, 2009, when the plaintiff filed a motion to restore the case to the docket. The defendant also states that the plaintiff was not living in Connecticut in April, 2010, to the date of the trial.

---

[4] Compare *LaBow* v. *LaBow*, supra, 171 Conn. 436 ("[§ 46-35] provides for jurisdiction for dissolution of marriage when [1] either party has been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint; [2] either party has been a resident for the twelve months next preceding the date of the decree") with General Statutes § 46b-44 (c) ("[a] decree dissolving a marriage or granting a legal separation may be entered if: [1] One of the parties to the marriage has been a resident of this state for at least the twelve months next preceding the date of the filing of the complaint or next preceding the date of the decree . . .").

The defendant further asserts that during that time the marital home was listed for sale, the plaintiff was in Sweden with Gustaf, and the defendant was in New Jersey, where he had made his residence. Therefore, he argues, the intent to remain in the United States was lacking, their domicile in Connecticut had been abandoned and a new domicile had been established.[5] We are not persuaded.

The defendant's argument centers around the date that the plaintiff filed the motion to restore the case to the docket and the date of the trial. That is not the operable standard.[6] As we discussed above, our Supreme Court precedent only requires the plaintiff to establish that for the twelve months before the date the complaint was filed—here, February 20, 2009—that either she or the defendant were domiciled in Connecticut with substantially continuous residence. See *LaBow* v. *LaBow*, supra, 171 Conn. 437.

As for the first requirement under § 46b-44 (c) (1) and *LaBow*, that one of the parties be domiciled in this

[5] The defendant cites to an Iowa Supreme Court decision, *In re Marriage of Kimura*, 471 N.W.2d 869 (Iowa 1991), for a domicile standard. According to the defendant, the court in *Kimura* stated that a new domicile is established when all of the following things happen: the former domicile is abandoned; there is an actual removal to, and physical presence in the new domicile; and there is a bona fide intention to change and to remain in the new domicile permanently or indefinitely. See id., 877. The defendant then argued that "[the plaintiff] moved to Sweden with the intention to live there and changed her mind upon learning that a dissolution of marriage action had been filed in Sweden." Therefore, we can infer, because he argues that she abandoned her domicile, that the defendant does not dispute that the plaintiff had been domiciled in Connecticut before leaving the state for Sweden.

[6] It appears that the defendant acknowledges that this is not the correct standard but is, instead, asking us to change the existing law. ("[The plaintiff] was not living in the [s]tate of Connecticut in August of 2009, when she filed the [motion to restore to the docket] the February, 2009 [c]omplaint. Nor was she living in the [s]tate of Connecticut in April of 2010 to the date of the trial. *Those should be the dates that measure residency, not February, 2009*.") (Emphasis added.)

state, the defendant does not dispute that the plaintiff and the defendant were both domiciled in Connecticut from 2002, until their separation in 2009. See footnote 5 of this opinion The defendant only argues that once he had gone to New Jersey and the plaintiff had gone to Sweden, that constituted an abandonment of their Connecticut domicile. Again, this argument is not persuasive. The plaintiff had traveled to Sweden on August 11, 2009, which was over five months *after* the filing of the complaint.

The record is replete with support for the finding that the plaintiff and the defendant were domiciled in Connecticut for the twelve months before the filing of the complaint. Our Supreme Court discussed the elements of domicile in *Adame* v. *Adame*, 154 Conn. 389, 225 A.2d 188 (1966). In that case, the court wrote: "The requisites of domicil are actual residence coupled with the intention of permanently remaining. . . . The intention is a fact which must be found by the court . . . and the intention must be to make a home at the moment, not to make a home in the future. . . . We discussed the concept of domicil at length in *McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 132 A. 902 [1926], where we noted that a domicil once acquired continues until another is established and that [t]he law does not permit one to abandon, nor recognize an abandonment of, a domicil until another has been established. We also there quoted with approval . . . from *Roxbury* v. *Bridgewater*, 85 Conn. 196, 201, 82 A. 193 [1912], that [a] change of domicil is a question of act and intention, and from Story, Conflict of Laws (5th Ed.) § 44 as follows: Two things, then, must concur to constitute domicil; first, residence; and secondly, the intention of making it the home of the party. . . . It is the fact, coupled with the intention of remaining there." (Citations omitted; internal quotation marks omitted.) *Adame* v. *Adame*, supra, 391.

The court found that the family came to Connecticut and lived in Mystic from 2002 to 2009. There is some confusion as to whether they recently moved back to Sweden or simply considered moving back to Sweden, but at the time that the dissolution action was commenced, they were both living in Connecticut and Gustaf was attending school in Mystic. As we mentioned above, the trial court also found that "[o]ne of the parties has resided continuously in the state of Connecticut for at least one year prior to the commencement of this action." Taking these two facts found by the court together, it is clear to us that the plaintiff met both of the requirements of domicile. First, she had been continuously residing in Connecticut from 2002 until the filing of the action on February 20, 2009. Second, our review of the record reveals that the plaintiff had been domiciled in Connecticut with the intent to remain for at least the twelve months before the filing of the complaint. At the hearing on October 7, 2009, the plaintiff testified that she had resided continuously in Connecticut since 2002. She testified that she had her driver's license here, that Gustaf had attended school his entire life here, and that their doctors and dentists are here. She also testified that, when she left for Sweden, she had not planned on staying there permanently, she temporarily stayed at her sister's house while she was there, and she is still receiving mail at the Connecticut home. Furthermore, the defendant testified that he still received mail in Connecticut too and stayed at the Mystic house at times. Accordingly, we conclude that the plaintiff had been domiciled in Connecticut for the twelve months before February 20, 2009, the date the complaint was filed.[7]

As for the second requirement under § 46b-44 (c) (1) and *LaBow*, continuous residence, the trial court

---

[7] Therefore, we need not determine whether the plaintiff had abandoned her domicile by her travels to Sweden.

explicitly found that "[o]ne of the parties has resided continuously in the state of Connecticut for at least one year prior to the commencement of this action." We see no reason to disturb the court's finding of continuous residence. Accordingly, the trial court properly determined that both requirements of § 46b-44 (c) (1) were met, and that it had subject matter jurisdiction over the dissolution action.

## II

The defendant next argues that the trial court abused its discretion by awarding a substantial percentage of the defendant's income to the plaintiff. He maintains that ordering him to pay the plaintiff most of his $9432 weekly gross income is an abuse of discretion. He purports that "[a] reasonable alimony order of [20 to 25 percent] of gross pay was well exceeded by this $3600 weekly alimony order." He states that he is also taxed at "the European rate in Switzerland." Finally, he argues that the legal system and our society could not construe the alimony order to be equitable.

The plaintiff responds that the court did not abuse its discretion. She argues that the court followed the correct criteria under General Statutes § 46b-82 when it fashioned its alimony award. The plaintiff asserts, contrary to the defendant's claim that the plaintiff received the bulk of the assets, that the assets were split evenly. As for the defendant's claim that he would be taxed at a higher rate in Europe, the plaintiff responds that although such information could have been introduced at the trial, the defendant offered no such evidence. The plaintiff also argues that the defendant's assertion that she was awarded most of the defendant's income has no merit. We agree with the plaintiff.

Our Supreme Court repeatedly has stated that "judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the

questions of whether the [trial] court correctly applied
the law and could reasonably have concluded as it did.
. . . Our function in reviewing such discretionary deci-
sions is to determine whether the decision of the trial
court was clearly erroneous in view of the evidence
and pleadings in the whole record. . . . With respect
to the financial awards in a dissolution action, great
weight is given to the judgment of the trial court because
of its opportunity to observe the parties and the evi-
dence. Moreover, the power to act equitably is the key-
stone to the court's ability to fashion relief in the infinite
variety of circumstances which arise out of the dissolu-
tion of a marriage. . . . For that reason, we allow every
reasonable presumption . . . in favor of the correct-
ness of [the trial court's] action. . . . Notwithstanding
the great deference accorded the trial court in dissolu-
tion proceedings, a trial court's ruling . . . may be
reversed if, in the exercise of its discretion, the trial
court applies the wrong standard of law." (Citation
omitted; internal quotation marks omitted.) *Kiniry* v.
*Kiniry*, 299 Conn. 308, 316, 9 A.3d 708 (2010).

"A fundamental principle in dissolution actions is that
a trial court may exercise broad discretion in awarding
alimony and dividing property as long as it considers
all relevant statutory criteria. . . . No single criterion
is preferred over others, and the trial court has broad
discretion in varying the weight placed on each criterion
under the circumstances of each case. . . . Our deci-
sions neither hold nor intimate that the trial court must
make specific, detailed findings on each factor it consid-
ered pursuant to § 46b-82 or otherwise. We do, however,
require that the record contain some indication as to
the reasoning of the trial court in making an exercise
of its discretionary powers in this type of proceeding."
(Citation omitted; internal quotation marks omitted.)
*Bento* v. *Bento*, 125 Conn. App. 229, 233, 8 A.3d 531
(2010). Section 46b-82 (a) provides in relevant part: "In

determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." See also *Bento* v. *Bento*, supra, 238.

In its memorandum of decision, the court stated that it had "fully considered the criteria of General Statutes §§ 46b-81, 46b-82, 46b-84, 46b-56, 46b-56c and 46b-62, as well as the evidence, applicable case law, the demeanor and credibility of the witnesses and arguments of counsel in reaching the decisions reflected in the orders that issue in [the] decision." The court properly considered the causes of the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income as required by § 46b-82. See footnote 8 of this opinion. The court found, among other things, that the cause of the dissolution was mutual; the defendant was fifty-nine years old and the plaintiff was fifty years old, and both were in good health; the defendant was employed as a research physician and was a vice president with Celgene and earned $482,000 including a bonus in 2008; his base salary is presently $6320 per week or $328,640 per year, and he earned a bonus of approximately $110,000 in 2009 for gross income of approximately $439,000; his gross earnings, year to date, were $490,470, his taxes were $154,876, and, thus, his net income was $335,594 or $6453 per week; and he has retirement plans at Pfizer, Celgene and Merrill Lynch. The court also found that the plaintiff is a licensed nurse in Sweden,

but she is not certified to work in the United States; she will have an earning capacity, after two years of schooling, to work as a nurse; she worked outside of the home during most of the marriage, but was primarily responsible for raising three children and was a capable and valued homemaker allowing the defendant to excel and to prosper in his demanding and rewarding career. Finally, the court found that each party will be eligible for Swedish retirement benefits under Swedish law.

The court then quoted at length from § 46b-82[8] regarding alimony. The court then listed its orders, including, among others, that the defendant shall pay alimony to the plaintiff in the amount of $3600 per week for five years and $3000 per week for an additional seven years.[9]

[8] General Statutes § 46b-82 (a) provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[9] Other financial orders relevant to our discussion include: "2. The [defendant] shall pay child support to the [plaintiff] in the amount of $473 per week and the parties shall divide any unreimbursed medical, optical, opthamalogical, psychological, orthodontic, or dental expenses, 88 [percent] payable by the [defendant] and 12 [percent] payable by the [plaintiff]. This is consistent with the Child Support guidelines, based on the [defendant's] net weekly income of $6453 . . . and the [plaintiff] earning nothing.

"3. The [defendant] shall pay alimony to the [plaintiff] in the amount of $3600 per week for five years and $3000 for seven years. Said alimony will

terminate upon the earlier of [twelve] years, the death of either, or the [plaintiff's] cohabitation, remarriage or civil union. It is otherwise modifiable as to amount only. The [plaintiff] may earn up to $40,000 per year as a safe harbor. . . .

"5. The [defendant] shall maintain medical and dental coverage for the children for so long as they are eligible. He shall pay three years of COBRA expenses for the [plaintiff] or should the [plaintiff] obtain employment, the cost of her employer-related health insurance, whichever is less for that period of time.

"6. The parties will continue to market the marital residence for sale and shall cooperate with one another to effectuate said sale. The [plaintiff] shall be permitted to reside in said residence, if she so desires, until its sale but regardless, she shall be responsible for all mortgage, taxes, insurance, and utilities, and maintenance and repairs of less than $500 until its sale. Any necessary repairs in excess of $500 will be shared by the parties. Upon its sale, the parties will share equally the net proceeds after the payment of customary closing costs, taxes, attorney's fees and the balance of the existing mortgage. The court will retain continuing jurisdiction regarding the sale. Each party shall be entitled to a 50 [percent] share of the mortgage interest and tax deduction for 2010.

"7. The parties will attempt to divide their personal property to their mutual satisfaction. If they are unable to resolve those matters amicably, they will refer the matter to binding arbitration with attorney Jeffrey Lowe and share his fees equally.

"8. The [plaintiff] shall retain the Chrysler motor vehicle.

"9. The parties shall share equally the insurance proceeds from the Saab automobile accident and the [defendant] shall provide all documentation related to said claim.

"10. The Celgene stock options shall be divided equally between the parties. At the plaintiff's request, the defendant shall exercise [his] one-half share of the options and pay to her the net amount of the option proceeds. The option proceeds shall be defined as the sales price of the option less the option cost less 35 [percent] for the defendant's federal and state income taxes.

"11. The parties shall share equally, valued as of the date of the dissolution, the defendant's Hartford Life insurance policy valued at approximately $5500, the defendant's Celgene 401 (k) plan valued at approximately $66,000, the defendant's Pfizer 401 (k) plan valued at approximately $79,500 and the defendant's Merrill Lynch account valued at approximately $4000. The parties shall share equally the cost of any qualified domestic relations order preparation.

"12. Each shall pay their own counsel fees.

"13. The [defendant] shall be entitled to the tax dependency exemptions of whichever children may be so eligible.

"14. The [defendant] shall maintain his current $1.4 million life insurance for the benefit of the [plaintiff] for so long as he has an alimony obligation. The defendant shall execute on behalf of the plaintiff an authorization for her to obtain any information related to both the Celgene and the Hartford Life insurance policies.

As we noted above, the court has broad discretion in dividing the parties' assets and issuing alimony orders. See *Kiniry* v. *Kiniry*, supra, 299 Conn. 316. Here, the court clearly and explicitly stated the proper standard of the law for alimony, the criteria listed in § 46b-82, and it properly analyzed the case under those § 46b-82 criteria. Accordingly, we cannot conclude that the court abused its broad discretion. See *Maturo* v. *Maturo*, 296 Conn. 80, 124, 995 A.2d 1 (2010).

The judgment of the trial court is affirmed.

In this opinion the other judges concurred.

"15. The [plaintiff] shall retain her bank accounts worth approximately $54,000 and a stock portfolio worth approximately $300,000 and the [defendant] shall retain his stock with Eli Lily Corporation worth approximately $3500 which are premarital.

"16. All of the existing defined benefit pension plans for the parties shall be divided equally. The plaintiff shall receive all cost-of-living allowances apportioned to her share and she shall further be named the joint survivor annuitant or other designation to ensure that she receive her share of this pension should the defendant predecease her. The court will retain continuing jurisdiction over the division of the pensions.

"17. All bank accounts not previously referenced in these orders will be divided equally, values as of the date of dissolution.

"18. All stock shares not previously referenced in these orders shall be divided equally."