******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# GERALD THUNELIUS *v.* JULIA POSACKI
## (AC 40635)

Lavine, Keller and Bishop, Js.

*Syllabus*

The defendant mother appealed to this court from the judgment of the trial court awarding the plaintiff father sole legal and primary physical custody of the parties' minor child and issuing certain orders. The plaintiff had filed an application seeking sole custody of the child, who had been living with the defendant since his birth. The plaintiff also filed motions for pendente lite orders to establish a parenting plan, to appoint a guardian ad litem for the child and for child support. Thereafter, the trial court issued a pendente lite order appointing H as guardian ad litem for the child and accepted the parties' stipulation regarding pendente lite financial orders. Subsequently, the defendant filed a motion seeking to hold the plaintiff in contempt for violating the pendente lite financial orders, and the plaintiff filed a motion to modify his support obligations under the financial orders, claiming a substantial change in circumstances. Following a hearing on the plaintiff's application for custody, the trial court found that the plaintiff had rebutted the presumption of joint legal custody and ordered that the plaintiff have sole legal and primary physical custody of the child, with parenting time for the defendant, and that the defendant pay the plaintiff $241 in weekly child support in accordance with the Connecticut child support guidelines. The court also issued a protective order pending any potential appeal to secure the custody award in order to provide a smooth as possible transition for the child. In addition, the court issued orders related to, inter alia, the child's education and associated costs, and ordered that H continue to serve as the child's guardian ad litem and issued various orders related thereto. The court also granted the plaintiff's motion to modify and ordered that the plaintiff's child support obligation would terminate on the date when the defendant's child support obligation began. The court, however, did not rule on the defendant's motion for contempt. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on her claim that the trial court improperly delegated its decision-making authority to a nonjudicial entity when it defined the duties and responsibilities of the guardian ad litem: none of the challenged duties amounted to an improper delegation of the court's authority, as the breadth of tasks assigned to the guardian ad litem reflected the court's confidence in the commitment and talent of the guardian ad litem, and the court's desire to minimize the effect of the parties' toxic parenting relationship on the child and to discourage them from heedless and incessant litigation over matters that should not require judicial intervention; moreover, contrary to the defendant's claim, requiring that the guardian ad litem hold the child's passport, monitor the parties' communications, review the child's telephone bill, investigate facts, make recommendations, mediate disputes and testify in court in no way empowered the guardian ad litem to issue orders that affect the parties or the child, and although the court did authorize the guardian ad litem to select a coparenting counselor/coordinator in the absence of an agreement between the parties, any dispute regarding the selection of a coparenting counselor/coordinator reflected little more than a difference of opinion or preference between the parties and did not so implicate the best interests of the child as to require judicial resolution of the matter.

2. The trial court abused its discretion in ordering that the prevailing party in any postjudgment dispute between the parties adjudicated by the court after unsuccessful mediation with the guardian ad litem be reimbursed by the other party for his or her share of the guardian ad litem's fees; the amount of any future fees and the parties' respective financial capacities to pay such fees were purely speculative, and there was nothing in the record to guarantee that if any such guardian ad litem fees became due, the respective financial situations of the parties would have remained unchanged.

3. The defendant's claim that the trial court improperly appointed the guardian ad litem without having complied with certain statutory requirements was moot, that court's relevant order having been superseded by subsequent orders of the court that addressed the same issues, and, therefore, there was no practical relief that this court could afford the defendant.

4. The trial court did not abuse its discretion in, sua sponte, issuing its protective order: the language of the order clearly indicated that that court intended it to function as a protective order issued pursuant to *Yontef* v. *Yontef* (185 Conn. 275) that was meant to ensure an orderly transition that protected the primary interests of the child in a continuous, stable custodial placement, and the court had the inherent authority to issue such an order sua sponte to preserve the parties' rights during the immediate postjudgment period pending an appeal; moreover, the need for such an order was amply supported by the record, as the court found that there was an extraordinarily high level of conflict and mistrust between the parties, that the parties had been wholly incapable of resolving such conflict, that the parties demonstrated a willingness to disregard court orders and to engage in self-help, and that their behavior had the potential to do irreparable harm to the child.

5. The trial court abused its discretion in ordering the parties to enroll the child in private school through high school and to divide the payments for that schooling: although that court did not abuse its discretion in determining that it was appropriate for the child to continue to attend the private school that he had been enrolled in through eighth grade, there was no evidence of the cost of a private high school or that the parties had ever agreed on the child attending a private high school, as the parties' financial affidavits listed only the cost of the child's current attendance at the private school, and the court's determination that it lacked sufficient evidence to issue an educational support order for higher education or private occupational school, pursuant to statute (§ 46b-56c [c]), supported the notion that the court also lacked sufficient evidence to issue an order for private high school.

6. The trial court did not abuse its discretion in relying on the child support guidelines worksheet in issuing its child support orders; contrary to the defendant's claim, the net income figures contained in the child support guidelines worksheet and relied on by the court were supported in the record.

7. This court declined to review the defendant's claim that the trial court, by failing to order the plaintiff to reimburse her for certain expenses he allegedly should have paid in accordance with a prior stipulation between the parties, in effect, granted the plaintiff a retroactive modification of pendente lite orders to pay those expenses; because the trial court did not rule on the defendant's motion for contempt, and it made no findings or orders in regard to what the defendant alleged the plaintiff owed, there was no retroactive modification from which to appeal, and, therefore, in the absence of a decision on the defendant's motion from the trial court or an explanation for its failure to rule on the motion, this court had no basis for reviewing the trial court's silence.

Argued May 16—officially released October 22, 2019

*Procedural History*

Application for custody of the parties' minor child, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Tindill, J.*; judgment awarding sole legal and primary physical custody to the plaintiff, and issuing certain orders; thereafter, the court, *Heller, J.*, issued certain orders, and the defendant appealed to this court. *Appeal dismissed in part*; *judgment reversed in part*; *judgment directed in part*.

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (defendant).

*Alexander J. Cuda*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. In this protracted, high conflict custody and support matter, the defendant mother, Julia Posacki, appeals from the judgment rendered by the trial court following a sixteen day trial on the custody action filed by the plaintiff father, Gerald Thunelius. On appeal, the defendant claims that the court improperly (1) delegated its decision-making authority to the guardian ad litem appointed for the parties' minor child, (2) ordered that the prevailing party in any postjudgment dispute adjudicated by the court after unsuccessful mediation with the guardian ad litem be reimbursed by the other party for his or her share of the guardian ad litem's fees, (3) appointed the guardian ad litem without having complied with the requirements of General Statutes §§ 46b-54 and 46b-12, (4) issued a protective order sua sponte, (5) ordered the parties to enroll the child in private school through high school and to share the payments for that schooling, (6) relied on unsupported net income figures on the child support guidelines worksheet prepared by the Judicial Branch, and (7) retroactively modified a pendente lite child support order by effectively forgiving the plaintiff's support arrearage. We agree with the defendant's second and fifth claims and further conclude that the defendant's third claim is moot. Accordingly, we affirm in part and reverse in part the court's judgment, and we dismiss in part the defendant's appeal.

The following facts and procedural history are taken from the court's memorandum of decision or are part of the record.[1] The parties, who never married one another, are the parents of a minor child who was born on November 2, 2010. On April 18, 2012, the plaintiff filed an application seeking sole custody of the child, who had been living with the defendant since his birth. The plaintiff also filed motions for pendente lite orders to establish a parenting plan, to appoint a guardian ad litem for the child, and for child support.

At a status conference held on June 20, 2012, the plaintiff's counsel recommended several attorneys for possible appointment as a guardian ad litem for the child, including Attorney Jocelyn B. Hurwitz. The defendant opposed appointing a guardian ad litem, but her attorney agreed that Hurwitz would be an acceptable choice should the court choose to appoint one. At the conclusion of the status conference, the court, *Novack, J.*, issued an oral pendente lite order appointing Hurwitz as guardian ad litem for the child. The court did not specify Hurwitz' duties or the length of her appointment.

On October 15, 2012, the court, *Schofield, J.*, approved the parties' pendente lite parenting agreement, pursuant to which the parties were to have joint legal custody of the child, with the defendant having

primary physical custody and the plaintiff having parenting time every other weekend and some holidays and vacations. Subsequently, on October 2, 2013, the court, *Emons*, *J.*, accepted the parties' stipulation regarding pendente lite financial orders. Pursuant to the pendente lite financial orders, the plaintiff was required to pay the defendant $389 in weekly child support and was required to provide medical and dental insurance for the child if available through his employer. As to the child's unreimbursed medical expenses, qualified child care expenses, and tuition and costs for the Whitby School through June, 2014, the plaintiff was responsible for 52 percent, and the defendant was responsible for 48 percent.[2]

On February 24, 2014, the defendant filed a motion seeking to hold the plaintiff in contempt for violating the pendente lite financial orders. She alleged that the plaintiff had failed and refused to reimburse her for his share of child care costs in the amount of $4309. She further alleged that the plaintiff unilaterally had reenrolled the child at the Whitby School for the 2014–2015 school year without the defendant's consent in violation of the pendente lite parenting plan and that he had informed her that he intended to deduct from his child support payments the defendant's share of the tuition. The defendant, therefore, requested that the court order the plaintiff to reimburse her for the child care costs, to refrain from making deductions to his child support obligation, and to pay 100 percent of the child's tuition for the Whitby School for the 2014–2015 school year. Subsequently, on May 15, 2014, the plaintiff filed a motion to modify his support obligations under the 2013 pendente lite financial orders, citing a substantial change in circumstances.

A trial to the court, *Tindill*, *J.*, on the plaintiff's custody application was conducted over the course of sixteen days between February, 2015 and October, 2016. In her proposed claims for relief filed on September 7, 2016, the defendant sought reimbursement from the plaintiff of $31,586 for child care expenses, $7117 for the child's health insurance premiums, $13,361 for tuition at the Whitby School for the 2014–2015 school year, and the plaintiff's share of all of the child's medical expenses incurred since October 2, 2013.

On June 29, 2017, the court issued a memorandum of decision finding that the plaintiff had rebutted, by a preponderance of the evidence, the presumption of joint legal custody under General Statues § 46b-56a.[3] The court, therefore, ordered that the plaintiff have sole legal custody and primary physical custody of the child, with parenting time for the defendant, and that the defendant pay the plaintiff $241 in weekly child support in accordance with the Connecticut child support guidelines. The court further ordered that, "[g]iven the likelihood of appeal, the court, sua sponte, hereby enters a

protective order pending any potential appeal to secure the award of sole custody to the plaintiff and parenting time for the defendant. The court, in consideration of the child's best interests, intends this protective order to offer as smooth as possible a transition for the child, under the circumstances, in the immediate postjudgment period."

As to the child's education, the court ordered that the child "shall attend the Whitby School until he completes the [eighth] grade or the parties' written stipulation to change schools is approved and made an order of the court, whichever occurs first" and that "[t]he parties shall split the cost, beginning the 2017–2018 academic year, of Whitby School or other private school education 56 [percent] (plaintiff) [and] 44 [percent] (defendant) through [twelfth] grade." The court noted, however, that there was insufficient evidence presented for it to issue an educational support order for the child's education beyond high school pursuant to General Statutes § 46b-56c.

The court further ordered that Hurwitz "shall continue to serve as guardian ad litem . . . for the minor child until further order of the court." The court also ordered in relevant part that "[t]he parties shall work to resolve any dispute or conflict regarding the minor child by mediation first with the [guardian ad litem] prior to filing a motion with the court. The cost and fees associated with mediation of postjudgment disputes with the [guardian ad litem] shall be split equally (50/50) by the parents. In the event that a motion is filed and litigated after unsuccessful resolution with the [guardian ad litem] of the dispute or issue regarding the minor child, the party who prevails in court shall be reimbursed his/her 50 [percent] for the [guardian ad litem] fees by the other party within one week of the court order resolving the dispute or issue." In reappointing Hurwitz as guardian ad litem, the court did not make an express finding that the appointment was in the child's best interests as required by § 46b-54 (a); nor did it give the parties an opportunity to agree on a different person to serve in the role as required by § 46b-12 (a). The court also did not issue a subsequent order that included all of the information required by § 46b-12 (c).

Additionally, the court ordered the parties "to work with Dr. David Bernstein, who shall serve as a coparenting counselor/coordinator, until further order of the court. . . . In the event Dr. Bernstein is not available to work with the parties as a coparenting counselor/coordinator, the [guardian ad litem] shall offer the parties no less than three options for a coparenting counselor/coordinator in writing no later than July 31, 2017. The options presented for the coparenting counselor/coordinator shall be based on the [guardian ad litem's] own independent research and work on behalf of her

ward . . . . The parties shall notify the [guardian ad litem], in writing, no later than one week from receipt of the options of their choice . . . from the coparenting counselor/coordinator options. In the event the parties do not agree on one of the coparenting counselor/coordinator options, or do not agree in writing within one week (without good cause as determined by [guardian ad litem]), the [guardian ad litem] shall select and notify the coparenting counselor/coordinator of her choice.''

The court also ruled on several of the parties' unresolved motions, including the plaintiff's May 15, 2014 motion to modify his pendente lite support obligations. The court granted this motion and ordered that the plaintiff's child support obligation would terminate as of July 1, 2017, when the defendant's support obligation began. The court did not, however, rule on the defendant's February 24, 2014 motion for contempt. Nor did the court make any findings or issue any orders regarding any claimed arrearages. This appeal followed.

I

The defendant first claims that the court improperly delegated its authority to the guardian ad litem when it ''defined the duties and responsibilities of the [guardian ad litem] . . . .'' We are not persuaded.

''[W]hether the court improperly delegated its judicial authority presents a legal question over which we exercise plenary review.'' *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 170, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018). ''It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority.'' (Internal quotation marks omitted.) *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 371–72, 190 A.3d 68 (2018).

The defendant argues that ''[t]he court has made the [guardian ad litem] a permanent governmental presence in the life of the child and the parents and has granted [the guardian ad litem] decision-making authority in some of the fundamentals of their parenting.'' Specifically, the defendant notes that, pursuant to the court's orders, the guardian ad litem is (1) to hold the child's passport, (2) to have access to all family communications through OurFamilyWizard,[4] (3) to receive copies of the child's telephone bill, (4) to investigate facts, (5) to make recommendations as to what is in the child's

best interests, (6) to mediate the parties' disputes, (7) to act as final arbiter in the selection of a coparenting counselor/coordinator for the parties, and (8) to testify in court if the parties are unable to resolve a dispute in mediation.[5] Contrary to the defendant's suggestion, none of these duties amounts to an improper delegation of the court's authority. In sum, the breadth of tasks assigned to the guardian ad litem reflects the court's confidence in the commitment and talent of the guardian ad litem, and the court's desire to minimize the effect of the parties' toxic parenting relationship on their child and to discourage them from heedless and incessant litigation over matters that should not require judicial intervention.

Moreover, requiring that the guardian ad litem hold the child's passport, monitor the parties' communications, review the child's telephone bill, investigate facts, make recommendations, mediate disputes, and testify in court in no way empowers the guardian ad litem "*to issue orders* that affect the parties or the [child]." (Emphasis added; internal quotation marks omitted.) *Kyle S.* v. *Jayne K.*, supra, 182 Conn. App. 371. Indeed, as recognized by the Judicial Branch in a publication developed pursuant to General Statutes § 46b-12a,[6] a guardian ad litem may be asked by the court to "[i]nvestigate facts," "[r]eview files and records," "[p]articipate in court hearings," "[m]ake recommendations to the court," and "[e]ncourage settlement of disputes." Judicial Branch, State of Connecticut, "Guardian Ad Litem or Attorney for Minor Child in Family Matters" (June, 2014), available at https://www.jud.ct.gov/Publications/FM224.pdf (last visited October 17, 2019).[7]

We conclude, as well, that although the court's order does empower the guardian ad litem to select a coparenting counselor/coordinator should the parties disagree on whom to select, this does not constitute an improper delegation of judicial authority because the coparenting counselor/coordinator, in turn, has no delegated decisional authority from the court. As our Supreme Court has recognized, "conflicts frequently develop over relatively minor decisions relating to the day-to-day upbringing and support of minor children, conflicts which in reality reflect little more than a difference of opinion or preference between sometimes hostile parties. . . . Frequent litigation of these minor disagreements leads to frustrating court delays . . . and, because of the adversarial nature of traditional court proceedings, can work to heighten tensions and engender further conflict. . . . Where the issues involved do not themselves impact directly on the child's best interests, judicial resolution of each disagreement has been characterized as burdensome and counterproductive." (Citations omitted.) *Masters* v. *Masters*, 201 Conn. 50, 66, 513 A.2d 104 (1986). Thus, where the parties' dispute represents a mere "difference of opinion about fundamentally acceptable choices"; id., 69; such dispute does

not "so implicate the best interests of the children as to require a judicial decision . . . ." Id. In the present case, any dispute regarding the selection of a coparenting counselor/coordinator reflects little more than a difference of opinion or preference between the parties and does not so implicate the best interests of the child as to require judicial resolution of the matter. Consequently, the court's order authorizing the guardian ad litem to select a coparenting counselor/coordinator in the absence of an agreement between the parties did not amount to an improper delegation of judicial authority.

In sum, we conclude that the trial court did not improperly delegate its authority to a nonjudicial entity in defining the duties and responsibilities of the guardian ad litem.

## II

The defendant also claims that the court improperly ordered that the prevailing party in any postjudgment dispute adjudicated by the court after unsuccessful mediation with the guardian ad litem be reimbursed by the other party for his or her share of the guardian ad litem's fees. The defendant argues that this order constitutes an improper delegation of the court's authority to decide whether to sanction the parties. The defendant also appears to argue that the order is improper because it provides for automatic sanctions without taking into account the parties' current financial circumstances or making a finding that the losing party's position was totally without color and taken in bad faith. We disagree that this order amounted to an improper delegation of judicial authority[8] but agree that it was nevertheless improper because the court's authority to award fees in a custody matter is circumscribed by statute and decisional law.

We first briefly set forth the applicable standard of review. "[J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, [this court] allow[s] every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Pena* v. *Gladstone*, 168 Conn. App. 141, 149, 144 A.3d 1085 (2016).

In our assessment of this claim, we start with the oft-stated proposition that "[i]t is well entrenched in our jurisprudence that Connecticut adheres to the American rule. . . . Under the American rule, a party cannot recover [attorney's] fees in the absence of statutory authority or a contractual provision." (Citation omitted.) *Doe* v. *State*, 216 Conn. 85, 106, 579 A.2d 37 (1990). Additionally, the scope of the American Rule extends beyond the payment of counsel fees and encompasses ordinary expenses and the burdens of

litigation as well. *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). On the basis of our decisional law, we believe that the theory and thrust of the American Rule pertains to the assignment of fees and costs in the family law context as well. In that context and as it applies to the question at hand, "[t]he court may order either party to pay the fees for [a] guardian ad litem . . . pursuant to General Statutes § 46b-62, and how such expenses will be paid is within the court's discretion." (Internal quotation marks omitted.) *Greenan* v. *Greenan*, 150 Conn. App. 289, 305, 91 A.3d 909, cert. denied, 314 Conn. 902, 99 A.3d 1167 (2014). We look, then, to the parameters of § 46b-62 to determine if the statute authorizes an award of fees to one party from the other on the basis that a party seeks judicial intervention after having failed to reach an agreement. In this inquiry, because the provisions of § 46b-62 are an exception to the common-law American rule, our teaching is that the statutory provisions must be narrowly construed. See *Fennelly* v. *Norton*, 294 Conn 484, 504, 985 A.2d 1026 (2010) ("[w]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope" [internal quotation marks omitted]). On the basis of our review of § 46b-62 and the decisional law that flows from it, we find no authority for the court's award of guardian ad litem fees in the case at hand.

"The statutory authority for the award of fees for a court-appointed guardian ad litem is found in § 46b-62. . . . Section 46b-62 provides in relevant part: If, in any proceeding under this chapter . . . the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney. . . . The order for payment of [guardian ad litem] fees under . . . § 46b-62 requires consideration of the financial resources of both parties and the criteria set forth in General Statutes § 46b-82. . . . Section 46b-82 instructs the court to consider, inter alia, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." (Internal quotation marks omitted.) *Greenan* v. *Greenan*, supra, 150 Conn. App. 305.[9] Moreover, "[t]o provide a meaningful basis on which to assign responsibility for the payment of guardian ad litem fees, consideration of the financial situation of the parties and the statutory criteria should be made at the time that fees are sought." *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 377, 830 A.2d 329 (2003), cert. denied, 271 Conn. 942, 861 A.2d 514 (2004). Thus, this court has held that a trial court's anticipatory allocation of future guardian ad litem fees constitutes an abuse of discretion where "the amount, if any, of future . . . fees and the respective financial capacities of the parties to pay such fees are purely speculative."

Id., 377; see id., 377–78 (reversing order for allocation of future guardian ad litem fees to be paid 80 percent by plaintiff and 20 percent by defendant).

The order at issue in the present case provides in relevant part: "In the event that a motion is filed and litigated after unsuccessful resolution with the [guardian ad litem] of the dispute or issue regarding the minor child, the party who prevails in court shall be reimbursed his/her 50 [percent] for the [guardian ad litem] fees by the other party within one week of the court order resolving the dispute or issue."[10] In other words, the court ordered that 100 percent of any future guardian ad litem fees be paid by whichever party loses in court following an unsuccessful mediation. As in *Lamacchia* v. *Chilinsky*, supra, 79 Conn. App. 377–78, the amount of any future fees and the parties' respective financial capacities to pay such fees are purely speculative, and there is nothing in the record to guarantee that if any such guardian ad litem fees become due, the respective financial situations of the parties will have remained unchanged. We conclude, therefore, that the court abused its discretion in issuing this order.[11]

### III

The defendant next claims that the trial court improperly appointed the guardian ad litem without having complied with certain statutory requirements. More specifically, the defendant contends that the court violated (1) § 46b-54 (a)[12] by failing to make a specific finding that appointing a guardian ad litem was in the child's best interests, (2) § 46b-12 (a)[13] by appointing Hurwitz as guardian ad litem without giving the parties an opportunity to choose someone else, and (3) § 46b-12 (c)[14] by failing to issue a subsequent order setting forth certain statutorily required information regarding the appointment. In response, the plaintiff argues, inter alia, that the defendant's claim is moot as a result of subsequent, superseding orders issued by the court. We agree with the plaintiff that this claim is moot.

The following additional procedural history is relevant to this issue. Following the rendering of the June 29, 2017 judgment from which the defendant appeals, the trial court treated the portion of the judgment relating to the guardian ad litem as automatically stayed by operation of Practice Book § 61-11 (c).[15] Consequently, on April 16, 2018, the plaintiff filed a postjudgment motion again requesting that the court appoint Hurwitz as the child's guardian ad litem. The court, *Heller, J.*, heard the plaintiff's motion at short calendar on June 4, 2018.

Following the hearing, on June 11, 2018, the court, pursuant to § 46b-12 (a), provided the parties with written notification of fifteen persons, including Hurwitz, who the court deemed eligible to serve as guardian ad litem, and directed the parties to select one person

from this list by June 22, 2018.[16] The notification further advised that "[i]f the parties cannot agree on a person by the date specified, the court will select a person from this list." On June 22, 2018, the parties notified the court that they had failed to agree on a person to serve as guardian ad litem. Accordingly, on June 29, 2018, the court issued an initial order appointing Hurwitz as guardian ad litem for the child.

On July 27, 2018, the defendant filed a motion requesting that the court issue a subsequent order that included the information required by § 46b-12 (c). The court thereafter held a hearing over the course of three days in October and November, 2018, to take additional evidence with respect to its June 29, 2018 order appointing Hurwitz as guardian ad litem. Following the hearing, on December 17, 2018, the court issued an order finding that it was in the child's best interest for Hurwitz to remain his guardian ad litem and reaffirming its June 29, 2018 order. Also on December 17, 2018, the court issued an order setting forth the information required by § 46b-12 (c). The defendant has not appealed from any of these postjudgment orders.

"Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Brown* v. *Brown*, 132 Conn. App. 30, 34, 31 A.3d 55 (2011).

In the present case, Judge Heller's 2018 orders addressed the appointment of a guardian ad litem for the parties' child for a period of time postjudgment, the same issue decided by Judge Tindill in her June 29, 2017 order. Consequently, Judge Tindill's order has been superseded and is no longer in effect.[17] Thus, we conclude that there is no practical relief that this court can afford the defendant, and, therefore, this portion of the defendant's appeal is moot. See *Santos* v. *Morrissey*, 127 Conn. App. 602, 605–606, 14 A.3d 1064 (2011) (appeal from custody and visitation order was moot because it was superseded by subsequent order addressing same issues); *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 599–600, 952 A.2d 115 (2008) (plaintiff's

appeal from visitation order rendered moot by subsequent order expanding amount of time and circumstances under which plaintiff could visit his children).

## IV

The defendant next claims that the trial court abused its discretion when it issued a protective order without finding that there had been any domestic violence by either party or that the minor child had been abused or neglected, and without making it clear when the protective order would expire or what conduct would constitute a violation of the order. In short, the defendant equates the court's protective order with protective orders in cases of family violence.[18] See General Statutes § 46b-15 (providing for relief from physical abuse, stalking, or pattern of threatening by family or household member). The plaintiff argues in response that the court properly issued a protective order pursuant to our Supreme Court's decision in *Yontef* v. *Yontef*, 185 Conn. 275, 440 A.2d 899 (1981). We agree with the plaintiff.

"An order of the court will be affirmed if it is legally correct and finds support in its factual findings. It will be overturned only on a showing of abuse of the court's discretion." *Lane* v. *Lane*, 84 Conn. App. 651, 654, 854 A.2d 815 (2004). "[I]t is axiomatic that a judge has the ability to issue interim orders. . . . Our Supreme Court has expressly affirmed the necessity of interim orders in the best interests of children in dissolution proceedings. *Yontef* v. *Yontef*, [supra, 185 Conn. 293–94]." (Citation omitted.) *Lane* v. *Lane*, supra, 654.

In *Yontef*, our Supreme Court noted that pendente lite custody orders do not survive the rendition of a judgment and that the judgment itself, being automatically stayed by operation of Practice Book (1981) § 3065[19] (now § 61-11), is not binding for twenty days. *Yontef* v. *Yontef*, supra, 185 Conn. 291. The court further noted that, "[i]n this twenty-day gap period, the parties arguably may revert to their common law rights, under which both are entitled, without preference, to take custody." Id. The court found that such a resolution was both "unseemly" and "inconsistent with the concern, repeatedly enunciated in the statutes and the cases, for the best interests of the children." Id. The court therefore advised that "[a] trial court rendering a judgment in a disputed custody case should . . . consider entering protective orders sua sponte to ensure an orderly transition that protects the primary interests of the children in a continuous, stable custodial placement." Id., 291–92.

More specifically, the court stated: "In the interest of minimizing the emotional trauma so often imposed upon the children of divorce, a trial court should, at or before the time of its judgment, inquire whether its custody order is apt to be acceptable to the parties or

is apt to be further litigated upon appeal. If an appeal appears likely, the court should enter whatever interim postjudgment order it deems most appropriate, in the exercise of its broad discretion, taking into consideration the needs of the minor children for continuity, stability and well-being as well as the need of the parent who appeals for a fair opportunity fully to present his or her case. These legitimate needs are not, in all probability, apt to be protected if dissatisfied parties are able to intervene unilaterally, without judicial supervision, to effect changes in custody pending appeal. A court exercising its equitable jurisdiction with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children for the near as well as for the more distant future." Id., 293–94.

The order at issue in the present case, which was issued as part of the court's June 29, 2017 memorandum of decision, provides: "The [p]laintiff . . . shall have sole legal custody of the minor child. Given the likelihood of appeal, the [c]ourt, sua sponte, hereby enters a protective order pending any potential appeal to secure the award of sole custody to the [p]laintiff and parenting time for the [d]efendant. The [c]ourt, in consideration of the child's best interests, intends this protective order to offer as smooth as possible a transition for the child, under the circumstances, in the immediate postjudgment period."

The language of this order makes clear that the trial court intended it to function as a *Yontef*-type protective order meant "to ensure an orderly transition that protects the primary interests of the children in a continuous, stable custodial placement." *Yontef* v. *Yontef*, supra, 185 Conn. 291–92. As recognized in *Yontef*, the court had the inherent authority to issue such an order sua sponte to preserve the parties' rights during the immediate postjudgment period pending an appeal. See id., 292 ("[a]lthough there is no express statutory authority for a trial court to enter postjudgment orders, this court has recognized the inherent authority of a court to preserve rights pending an appeal"). Moreover, the need for such an order is amply supported by the record. In its memorandum of decision, the court found that there is an "extraordinarily high level of conflict and mistrust between the [parties]," that "the parties have been *wholly incapable* of [resolving such conflict]," that the parties "demonstrate a willingness to disregard court orders and engage in self-help," and that the parties' behavior "has the potential to do irreparable harm to the minor child." (Emphasis in original.) In these circumstances, we conclude that the court did not abuse its discretion in issuing a *Yontef* protective order.[20]

V

The defendant next claims that the court improperly

ordered the parties to enroll the child in private school through high school and to divide the payments for that schooling. Specifically, the defendant argues that the order stating that the child continue in the Whitby School through eighth grade and that the parties divide the cost of a private school through twelfth grade is unsupported by any evidence that private school is in the child's best interests or any evidence of the costs of the Whitby School through the eighth grade or the cost of a private high school. In response, the plaintiff argues that, because their financial affidavits revealed what they were paying for the Whitby School, the court did, in fact, have evidence of the cost of the school. We agree with the defendant in part.

In its memorandum of decision, the trial court issued the following order in regard to the child's education: "The minor child shall attend the Whitby School until he completes the [eighth] grade or the parties' written stipulation to change schools is approved and made an order of the [c]ourt, whichever occurs first. . . . The parties shall split the cost, beginning the 2017–2018 academic year, of Whitby School or other private school education 56 [percent] (plaintiff) [and] 44 [percent] (defendant) through [twelfth] grade."

"[C]ourts have the power to direct one or both parents to pay for private schooling, if the circumstances warrant. It is a matter to be determined in the sound discretion of the court on consideration of the totality of the circumstances including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special needs and general welfare of the children." (Internal quotation marks omitted.) *Carroll* v. *Carroll*, 55 Conn. App. 18, 24, 737 A.2d 963 (1999). In addition, "[t]he right of the custodial parent to make educational choices is . . . an insufficient basis, absent a showing of special need or some other compelling justification, for increasing the support obligation of the noncustodial parent who genuinely doubts the value of the program that he [or she] is being asked to underwrite." (Internal quotation marks omitted.) Id., 25.

We first address the defendant's argument that there was no evidence that continuing to send the child to the Whitby School was appropriate. Both parties in their proposed claims for relief supported the notion that the child could continue to attend the Whitby School or some other private school, but simply disagreed on who should pay for such education. In addition, the court had evidence of the cost of the Whitby School through the parties' financial affidavits. Moreover, the court, in its findings, made the following determination: "The child has adjusted well to his home, school, and community environments. There is credible evidence before the [c]ourt that the school in which the child is currently enrolled has been a stabilizing factor amidst

the parents' prolonged legal battle. Other than his parents' conflict, his school environment has been a steadfast, reliable element in his short life." Thus, the record reflects that the court considered the totality of the circumstances in making its determination of whether it was appropriate for the child to continue to attend the Whitby School, including the cost for both parties as well as the benefit that the school has had on the child. Accordingly, we conclude that the court did not abuse its discretion in this regard.

Turning to the defendant's argument in regard to the cost of high school, we agree with the defendant that there was no evidence of the cost of a private high school or that the parties had ever agreed on the child attending a private high school. As previously discussed, the parties' financial affidavits list only the cost of the child's current attendance at the Whitby School. In addition, although the plaintiff's amended proposed claims for relief states that the parties shall equally pay the cost of private school through high school, the defendant's proposed claims for relief only references payment of the cost of the Whitby School or another private school if the defendant chooses to enroll the child in a private school other than the Whitby School. Moreover, the court's determination in its findings that it lacked sufficient evidence to make an educational support order for higher education or private occupational school, pursuant to § 46b-56c (c),[21] supports the notion that the court also lacked sufficient evidence to make an order for private high school. Accordingly, we conclude that the court abused its discretion in ordering the parties to divide the cost of private school education beyond eighth grade.

## VI

The defendant next claims that the trial court improperly relied on unsupported net income figures contained in the child support guidelines worksheet prepared by the Judicial Branch in issuing its child support orders. In particular, the defendant claims that the net income figures relied on by the court in the child support guidelines worksheet were different from the figures shown in the parties' financial affidavits and trial testimony, and, therefore, were unsupported by the evidence. In response, the plaintiff argues that the court may refuse to consider this issue because the defendant failed to raise it in her preliminary statement of issues. The plaintiff alleges that this failure prejudiced him because he is now foreclosed from timely filing a motion for articulation to help address his defense of the child support orders.[22] The plaintiff also argues that the court had sufficient evidence on which to base its child support orders and that, on the basis of that evidence, the orders were not clearly erroneous. We agree with the plaintiff that the court had sufficient evidence on which to base its child support orders.

We review the trial court's application of the child support guidelines under an abuse of discretion standard. See *Tuckman* v. *Tuckman*, 308 Conn. 194, 208, 61 A.3d 449 (2013) (court concluded that trial court had abused its discretion in awarding child support "without determining the net income of the parties, mentioning or applying the guidelines, or making a specific finding on the record as to why it was deviating from the guidelines"). General Statutes § 46b-215b (a) provides in relevant part: "The child support and arrearage guidelines . . . shall be considered in all determinations of child support award amounts . . . . In all such determinations, *there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered.* A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case . . . *shall be required in order to rebut the presumption in such case.*" (Emphasis added.)

The defendant does not identify any finding that indicates that the court's application was inequitable or inappropriate but, rather, alleges that the resulting child support orders were inconsistent with the evidence in the record. Contrary to the defendant's argument, however, the evidence supports the figures enumerated in the court's child support guidelines worksheet. The defendant testified that she has a gross weekly income of $2885 and a net weekly income of $1712, which match the figures listed in her financial affidavit. The defendant also testified that, in addition to her salary, she could receive a discretionary bonus as well as a retention performance based on her production and subject to her employment agreement, and that she was due to receive a forgivable loan from her new employer, which would compensate her for the deferred equity compensation she gave up when she left her prior employer. Moreover, the defendant testified that she deducts $132 per week from her gross weekly income for deferred compensation or 401 (k), which is also shown on her financial affidavit. The addition of $132 per week to her gross weekly income of $2885 equals $3017, which matches the amount set forth in the court's child support guidelines worksheet. As such, the net income figures contained in the child support guidelines worksheet and relied on by the court are supported in the record.

Accordingly, we conclude that the trial court did not abuse its discretion in relying on the child support guidelines worksheet in issuing its child support orders.

## VII

Finally, the defendant claims that by not ordering the plaintiff to reimburse her for certain expenses she alleges he should have paid in accordance with an ear-

lier stipulation between them, the trial court, in effect, granted the plaintiff a retroactive modification of pendente lite orders to pay those expenses. We decline to review the defendant's claim.

Unlike the present custody and support action, in a marital dissolution case, pendente lite orders merge with the judgment and, therefore, have no vitality postjudgment. *Parrotta* v. *Parrotta*, 119 Conn. App. 472, 479, 988 A.2d 383 (2010). The present case, however, is not one for a marital dissolution; rather, it is a series of orders made by the court in response to multiple filings regarding a range of issues in an ongoing dispute between these parents.[23] Because the court did not rule on the defendant's motion for contempt, and it made no findings or orders in regard to what the defendant alleged the plaintiff owed, there is no retroactive modification from which to appeal. In short, absent a decision on the motion from the court or an explanation for its failure to rule on the defendant's motion, we have no basis for reviewing the court's silence.[24] In addition, although we are mindful of the court's responsibility to timely respond to the parties' filings in pending matters, the avalanche of filings in this matter renders it nearly impossible for the court to keep pace without a singular dedication to this matter. Therefore, we decline to review this claim. See *Bento* v. *Bento*, 125 Conn. App. 229, 234–35, 8 A.3d 531 (2010) (court could not review claim that trial court abused its discretion in awarding defendant attorney's fees where not clear from trial court's order as to factual and legal basis on which it awarded such fees).

The appeal is dismissed with respect to the defendant's third claim, the judgment is reversed with respect to the court's orders that (1) the prevailing party in any postjudgment dispute adjudicated by the court after unsuccessful mediation with the guardian ad litem be reimbursed by the other party for his or her share of the guardian ad litem's fees and (2) the parties enroll the child in private school through high school and share the payments for that schooling, and the case is remanded with direction to vacate those orders; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Although much of the postjudgment procedural history is not reflected in the record provided by the parties, it is well established that "[this court], like the trial court, may take judicial notice of files of the Superior Court in the same or other cases." (Internal quotation marks omitted.) *Wasson* v. *Wasson*, 91 Conn. App. 149, 151 n.1, 881 A.2d 356, cert. denied, 276 Conn. 932, 890 A.2d 574 (2005).

[2] The Whitby School is a private, independent school located in Greenwich providing education for children from preschool through the eighth grade.

[3] More specifically, the court found that joint legal custody was "not in the minor child's best interests as the parties have consistently demonstrated a refusal to effectively coparent."

[4] In its June 29, 2017 memorandum of decision, the court ordered that "[t]he parties shall, except in cases of an emergency, only communicate about their son through OurFamilyWizard . . . the guardian ad litem, or the coparenting counselor/coordinator, until further order of the court."

OurFamilyWizard is a commercial application designed to facilitate communications between parents who do not live together. See OurFamilyWizard, available at https://www.ourfamilywizard.com/.

[5] The defendant also argues that "[t]he court's orders conflate the distinct roles of mediator and [guardian ad litem] in problematic and impermissible ways." Specifically, she notes that "[t]he same individual who mediates a parenting dispute between the parties is tasked with investigating the dispute, making a recommendation and testifying in support of that recommendation if a matter goes before the court for resolution." Although we believe that the court's use of the term "mediator" is inapplicable for the task assigned to the guardian ad litem to "mediate the parties dispute" because the classic role of a mediator to facilitate a couple's negotiations requires confidentiality and does not permit a mediator to either adjudicate a party's disputes or to make recommendations to others beyond the parties, we do not understand the court's assignment to be that of a true mediator. Instead, the court assigned a dual role to the guardian ad litem: to work with the parties to assist them to reach agreements on disputed areas of parenting and, if unsuccessful, to report and make recommendations to the court. Because that dual role would, indeed, violate the tenets of mediation, the court's use of the term is misplaced. The assigned function, however, shorn of its title, is entirely appropriate for a guardian ad litem. In a different context, where a mediator has been retained by the parties to help them negotiate the terms of their parenting dispute, we might find this argument persuasive. In such a situation, the mediator does not have a reporting function, and, indeed, to undertake a reporting function in that context may well violate the terms of a mediation agreement or the mediator's own professional responsibilities. See Academy of Professional Family Mediators, "Standards of Practice for Professional Family Mediators," (2014), available at https://apfmnet.org/standards-practice-professional-family-mediators/ (last visited October 17, 2019); see also "Model Standards of Practice for Family and Divorce Mediation," available at https://www.americanbar.org/content/dam/aba/migrated/family/reports/mediation.authcheckdam.pdf (last vistited October 17, 2019). However, where a guardian ad litem has been appointed by the court and, in that capacity, has a duty to give evidence to the court, the guardian ad litem does not serve as a mediator but has a hybrid function to assist the parties in dispute to resolve issues and, when required, to provide information regarding a child's best interests to the court. In that context, and with the full understanding of the parties of the contours of the guardian ad litem's function, we see no inconsistency between the reporting function of the guardian ad litem and her role in attempting to assist the parties to resolve issues relating to the child.

[6] General Statutes § 46b-12a provides in relevant part: "The Judicial Branch shall develop a publication that informs parties to a family relations matter about the roles and responsibilities of counsel for a minor child and the guardian ad litem for a minor child when such persons are appointed by the court to serve in a family relations matter. . . . Such publication shall be available to the public in hard copy and be accessible electronically on the Internet web site of the Judicial Branch."

[7] We recognize that there may be tension between the duty to encourage settlement of disputes and the proscription in the "Code of Conduct for Counsel for the Minor Child and Guardian Ad Litem" (code of conduct) that a guardian ad litem may only communicate directly to litigants represented by counsel with the permission of counsel. See Judicial Branch, State of Connecticut, "Code of Conduct for Counsel for the Minor Child and Guardian Ad Litem," available at https://www.jud.ct.gov//family/GAL_code.pdf (last visited October 17, 2019). On appeal, however, we need not reach that issue because neither party has asserted that the court's orders in this regard conflict with the code of conduct adopted by the Judicial Branch. In the future, we believe that it would be appropriate for the court, in issuing its directives to guardians ad litem to couch them in terms that comport with the code of conduct.

[8] The defendant argues more specifically that, "[e]ssentially, the [guardian ad litem] is deemed by prior court order to be the correct arbiter and one of the parties will automatically be sanctioned for failing to accede to the [guardian ad litem's] recommendations, without court approval and regardless of whether the [guardian ad litem's] position was even correct. . . . The [guardian ad litem's] inability to successfully mediate with the parties determines whether sanctions occur and the court neither reviews nor approves such sanctions." (Emphasis omitted.) According to the defendant, this amounts to an improper delegation of the court's authority to

sanction the parties.

Contrary to the defendant's suggestion, the court's order does not empower the guardian ad litem to resolve any disputes between the parties. The guardian ad litem's role is limited to working with the parties to help them reach agreements. In this sense, the role has some parallels to that of a mediator, except that it also includes a reporting role which, as we have noted, is inconsistent with the role of one strictly engaged as a mediator. Mediation is "[a] method of *nonbinding* dispute resolution involving a neutral third party who tries to help the disputing parties reach a *mutually agreeable solution* . . . ." (Emphasis added.) Black's Law Dictionary (11th Ed. 2019). In other words, the role of a mediator is not to impose his or her recommended resolution on the parties but to assist the parties in resolving the dispute themselves. Thus, to the extent that the court's order in the present case properly may be construed as providing for automatic sanctions, it is the parties' failure to agree with *each other* that triggers the sanction and not their failure to follow the guardian ad litem's recommendations. We, therefore, disagree with the defendant's underlying assumption that the practical effect of the court's order is to penalize the parties for failing to agree with the guardian ad litem. It is a sanction simply for failure to reach an accord. As subsequently noted in this opinion, however, we find the sanction problematic for reasons relating to the court's authority to award fees generally.

[9] "The appointment of a guardian ad litem, specifically authorized by General Statutes § 45a-132 (a), is governed by the same standards as those pertaining to an attorney for minor children, and the standards regarding payment of fees are the same for both categories." *Greenan* v. *Greenan*, supra, 150 Conn. App. 306 n.12; see also *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 375 n.3, 830 A.2d 329 (2003) ("[w]e note that although . . . § 46b-62 addresses only the issue of attorney's fees, we previously have recognized that the same criteria properly informs the court's exercise of discretion regarding fees for a guardian ad litem appointed for a minor child in a dissolution of marriage action or in an action seeking a modification of custody and visitation" [emphasis omitted]), cert. denied, 271 Conn. 942, 861 A.2d 514 (2004).

[10] The defendant does not challenge the propriety of the court's baseline fifty-fifty allocation of payment of guardian ad litem fees.

[11] We note that, pursuant to General Statutes § 46b-87, the trial court is empowered to award attorney's fees to the prevailing party in a contempt proceeding without balancing the parties' respective financial abilities. See *Larson* v. *Larson*, 138 Conn. App. 272, 277–78, 51 A.3d 411, cert. denied, 307 Conn. 930, 55 A.3d 769 (2012). Similarly, the court has the inherent authority to assess attorney's fees against a losing party where the party's claim was entirely without color and the party acted in bad faith. See *Berzins* v. *Berzins*, 306 Conn. 651, 661–63, 51 A.3d 941 (2012). Even if we were to assume that these same rules apply to guardian ad litem fees, the order at issue in the present case does not limit its application to circumstances in which the losing party is found in contempt, acted in bad faith, or asserted a claim that was entirely without color.

[12] General Statutes § 46b-54 (a) provides in relevant part: "The court may appoint . . . a guardian ad litem for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. . . ."

[13] General Statutes § 46b-12 (a) provides in relevant part: "[P]rior to appointing . . . a guardian ad litem for any minor child in a family relations matter, the court shall provide the parties to the matter with written notification of fifteen persons who the court has determined eligible to serve as . . . a guardian ad litem for any minor child in such matter. . . . Not later than two weeks after the date on which the court provides such written notification, the parties shall provide written notification to the court of the name of the person who the parties have selected to serve as . . . a guardian ad litem. In the event that the parties (A) fail to timely provide the court with the name of the person to serve as . . . guardian ad litem, or (B) cannot agree on the name of the person to serve as . . . guardian ad litem, the court shall appoint . . . a guardian ad litem for the minor child by selecting one person from the fifteen names provided to the parties."

[14] General Statutes § 46b-12 (c) provides in relevant part: "Not later than twenty-one days following the date on which the court enters an initial order appointing . . . a guardian ad litem for any minor child pursuant to this section, the court shall enter a subsequent order that includes the

following information: (1) The specific nature of the work that is to be undertaken by such . . . guardian ad litem; (2) the date on which the appointment of such . . . guardian ad litem is to end, provided such end date may be extended for good cause shown pursuant to an order of the court; (3) the deadline for such . . . guardian ad litem to report back to the court concerning the work undertaken; (4) the fee schedule of such . . . guardian ad litem that shall minimally set forth (A) the amount of the retainer, (B) the hourly rate to be charged, (C) the apportionment of the retainer and hourly fees between the parties, and (D) if applicable, all provisions related to the calculation of fees on a sliding-scale basis; and (5) a proposed schedule of periodic court review of the work undertaken by such . . . guardian ad litem and the fees charged by such . . . guardian ad litem. . . . Not later than thirty days after the entry of a final judgment in a family relations matter involving . . . a guardian ad litem for a minor child, such . . . guardian ad litem shall file with the court an affidavit that sets forth (A) the case name, (B) the case docket number, and (C) the hourly fee charged, total number of hours billed, expenses billed and the total amount charged by such . . . guardian ad litem. . . .”

[15] Practice Book § 61-11 (c) provides in relevant part: “Unless otherwise ordered, no automatic stay shall apply to orders of relief from physical abuse pursuant to General Statutes § 46b-15, to orders for exclusive possession of a residence pursuant to General Statutes §§ 46b-81 or 46b-83 or to orders of periodic alimony, support, custody or visitation in family matters brought pursuant to chapter 25, or to any decision of the Superior Court in an appeal of a final determination of a support order by a family support magistrate brought pursuant to chapter 25a, or to any later modification of such orders. . . .”

Ostensibly, the trial court determined that an order appointing a guardian ad litem does not constitute an order for support, custody, or visitation. We need not address the correctness of this determination. The important point is that the court treated the order appointing the guardian ad litem as stayed.

[16] The court provided this notification using a form published by the Judicial Branch, JD-FM-229, titled “Notice to Parties of Persons Eligible to Serve as Counsel or Guardian Ad Litem for Minor Child or Children and Notice to Court of Person Selected.”

[17] In reaching this conclusion, we do not conclude that Judge Tindill’s order that the guardian ad litem “mediate” the parties’ disputes was rendered moot by any subsequent order because the record does not reflect either that the order was nullified by Judge Heller or that it was in any other way vitiated.

[18] The defendant, however, cites to statutes providing for *criminal* protective orders. See General Statutes §§ 46b-38c (providing for criminal protective orders in cases of family violence), 53a-40e (authorizing court to issue standing criminal protective orders for specified duration against persons convicted of family violence crimes), and 54-1k (providing for criminal protective orders in cases of stalking, harassment, sexual assault, and risk of injury to or impairing morals of child). Her reliance on these statutes is misplaced, as criminal protective orders are not within the ambit of the family division of the Superior Court. See General Statutes § 46b-1 (enumerating matters within jurisdiction of Superior Court deemed to be family relations matters).

[19] Practice Book (1981) § 3065 provided: “In all actions, except criminal actions and actions concerning child neglect brought pursuant to chapter 37, proceedings to enforce or carry out the judgment shall be stayed for twenty days; if the time in which to take an appeal is extended under [§] 3097 such proceedings shall be stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment in the supreme court, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that the extension is sought or the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated. This section shall not apply to orders of a court rendered on an application for a prejudgment remedy nor shall it apply to dispositions in delinquency matters. In appeals from such matters there shall be no stay unless the judge making the disposition grants one.”

[20] In her reply brief, the defendant appears to argue that the order in the present case is improper because *Yontef* protective orders are no longer necessary in light of the 1986 amendments to Practice Book § 61-11, which resolved the problem that the type of protective order approved of in *Yontef*

was meant to address. Although we agree that *Yontef*-type protective orders may be unnecessary in some circumstances, we disagree that this renders such orders improper.

As our Supreme Court has clarified, its "concern in *Yontef* was to ensure an orderly transition [from prejudgment status to postjudgment status] that protects the primary interests of the children in a continuous, stable custodial placement *during the period in which the enforcement of the judgment is stayed.*" (Emphasis added; internal quotation marks omitted.) *Garrison* v. *Garrison*, 190 Conn. 173, 182, 460 A.2d 945 (1983). In 1986, however, Practice Book § 61-11 was amended to exclude custody and visitation orders from operation of the automatic stay of execution provision. See W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2018–2019 Ed.) § 61-11, pp. 110–11. Such orders, once issued, are now immediately enforceable, and, thus, there is no longer a "gap period" between pendente lite custody orders and the final orders. See *Yontef* v. *Yontef*, supra, 185 Conn. 291. Thus, we agree with the defendant that *Yontef*-type protective orders may be superfluous in most cases involving issues of custody and visitation. Cf. *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 304, 536 A.2d 978 (issuing *Yontef* protective order requiring that physical custody of child remain with defendant until trial court, on remand, has had opportunity to address issue of custody at new hearing), cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). Nevertheless, the standard for reversing a trial court's order is abuse of discretion, and not that the order was unnecessary. Moreover, the trial court has inherent equitable authority to protect the integrity of its judgment. *Carpenter* v. *Montanaro*, 52 Conn. App. 55, 58, 725 A.2d 390 (1999).

[21] General Statutes § 46b-56c (c) provides: "The court may not enter an educational support order pursuant to this section unless the court finds as a matter of fact that it is more likely than not that the parents would have provided support to the child for higher education or private occupational school if the family were intact. After making such finding, the court, in determining whether to enter an educational support order, shall consider all relevant circumstances, including: (1) The parents' income, assets and other obligations, including obligations to other dependents; (2) the child's need for support to attend an institution of higher education or private occupational school considering the child's assets and the child's ability to earn income; (3) the availability of financial aid from other sources, including grants and loans; (4) the reasonableness of the higher education to be funded considering the child's academic record and the financial resources available; (5) the child's preparation for, aptitude for and commitment to higher education; and (6) evidence, if any, of the institution of higher education or private occupational school the child would attend."

[22] We disagree and conclude that we may consider this issue. See *Bouchard* v. *Deep River*, 155 Conn. App. 490, 496, 110 A.3d 484 (2015) ("although the trial court did not reach a dispositive issue and the defendant did not raise that issue in a preliminary statement of issues as an alternative ground for affirmance pursuant to Practice Book § 63-4 [a] [1], a court can still affirm the judgment of a trial court so long as the plaintiff is not prejudiced or unfairly surprised by the consideration of the issue" [footnote omitted]); *Pelletier Mechanical Services*, *LLC* v. *G. & W. Management, Inc.*, 162 Conn. App. 294, 302, 131 A.3d 1189 (court considered issue not raised by trial court or included in plaintiff's preliminary statement of issues because it presented question of law, record was adequate for review, and defendant not prejudiced because it had time to file reply brief), cert. denied, 320 Conn. 932, 134 A.3d 622 (2016).

Although whether the trial court's application of the child support guidelines is supported by the record is a question of fact, the record is adequate for review, the issue was briefed by both parties, and consideration of the issue would not prejudice the plaintiff. Moreover, the language of Practice Book § 63-4 (a) (1), which provides in relevant part that "[w]henever the failure to identify an issue in a preliminary statement of issues prejudices an opposing party, the court *may* refuse to consider such issue," is clearly permissive. (Emphasis added.)

[23] Indeed, the docket sheet for this matter in the Superior Court reflects that, since the present appeal was commenced, the parties have filed in excess of forty-five filings as of May, 2019.

[24] The defendant did not file a motion for reargument or reconsideration regarding her motion for contempt.